UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA L. WRIGHT,

    Plaintiff,

v.                                          Case No. 1:24-cv-226

COMMISSIONER OF SOCIAL              Hon. ROBERT J. JONKER
SECURITY,

    Defendant,
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on August 7, 2020, alleging a disability onset date of March 25, 2020.  PageID.36.  Plaintiff identified her disabling conditions to include psoriasis, psoriatic arthritis, type 2 diabetes, osteoarthritis, degenerative disc disease, and, left and right rotator cuff tendonitis.  PageID.212.  Plaintiff completed the 12th grade, and had past relevant employment as an assistant manager, cashier/checker, laborer, stores, machine feeder, bank teller, and vault teller.  PageID.46.  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 18, 2023.  PageID.36-48.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.     ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 25, 2020, and meets the insured status requirements of the Social Security Act through December 31, 2025.  PageID.38. At the second step, the ALJ found that plaintiff had severe impairments of psoriatic arthritis, bilateral hip osteoarthritis, L5-S1 degenerative disc disease, T12-L1 degenerative disc disease, and obesity.  PageID.38.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.40.

The ALJ decided at the fourth step that:

> Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), but can never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; only occasionally reach, handle, or finger with her left upper extremity; with no more than frequent exposure to non-weather-related temperature extremes.

PageID.41.  The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.46.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level.  PageID.47-48.  Based on the testimony of the vocational expert (VE), the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as "cashier II" (50,000 jobs), cleaner/housekeeper (100,000 jobs), and cafeteria attendant (100,000 jobs).  PageID.47.  Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from March 25, 2020 (the alleged onset date) through January 18, 2023 (the date of the decision). PageID.48.

### III.    DISCUSSION

Plaintiff raised three related errors.[1]

**A. The ALJ committed a reversible error by denying plaintiff benefits at least in part because she had received unemployment benefits.**

As discussed, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform light work. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. § 404.1545. The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).

Plaintiff contends that the medical evidence supports a finding that plaintiff has the RFC to perform sedentary work, stating in part,

> [The ALJ] discarded the two opinions of the non-examining physicians (both of whom limited Plaintiff to work at the sedentary level of exertion (PageID.110-112, 126-127) because of his belief that Plaintiff's acceptance of unemployment benefits almost three years earlier and her alleged abilities to perform basic living activities made those opinions unfounded (PageID.46).

Plaintiff's Brief (ECF No. 13, PageID.1736).

Plaintiff is referring to the ALJ's consideration of plaintiff's statements which were inconsistent with a disability claim, which included filing for unemployment benefits:

> In making this decision, I considered various statements made by claimant throughout the evidence of record which are inconsistent with total disability. For example, at hearing, claimant acknowledged that she had been able to work at the time she filed for unemployment benefits (around the time of her alleged onset date). Approximately two months after commencing this application, on October

---

[1] The Court notes that plaintiff has set out her arguments in a single narrative. Plaintiff's Brief (ECF No. 13, PageID.1736-1740).

26, 2020, claimant reported that she could walk two miles on a good day (Ex. 8F-26). When completing an Adult Function Report, claimant acknowledged caring for a pet cat (Ex. 3E-2), preparing complete meals one or two days per week, cleaning her home, completing laundry, mowing her lawn on a riding mower, tending to a flower garden (Ex. 7D-3), operating a motor vehicle, and shopping in stores (Ex. 3E-4). Claimant's acknowledged ability to complete these activities indicates that she has the requisite capabilities for work conforming to the above residual functional capacity [*i.e.*, a limited range of light work].

PageID.46.[2]

As an initial matter, the ALJ did not connect plaintiff's statement regarding the unemployment benefits with the non-examining physicians' RFCs. That being said, the ALJ's decision is not entirely clear with respect to those RFC determinations. The ALJ appears to characterize both state agency consultants, Shanthini Daniel, M.D. and Francis Grubelich, M.D., as finding that plaintiff had a sedentary RFC, and that "I do not find the proposed residual functional capacity persuasive." PageID.45. However, the Court's reading of the record indicates that Dr. Grubelich reconsidered the original RFC and made a different finding.

On July 14, 2021, non-examining state agency medical consultant Shanthini Daniel, M.D. found that plaintiff retained the RFC for sedentary work. PageID.45, 115. Plaintiff was found not disabled. PageID.133. On August 11, 2021, plaintiff requested reconsideration of the finding. PageID.140. On January 12, 2022, state agency consultant Francis Grubelich, M.D. reviewed the medical records "on recon [sic] less than light RFC" and in his "RFC additional finding" concluded that plaintiff retained the RFC for light work, *i.e.*, "[o]n reconsideration of the claimant [sic] is capable of *a limited light residual functional capacity* for cervical spine and lumbar spine DDD, psoriatic arthritis with left upper extremity decreased strength, and obesity." PageID.128 (emphasis added). On January 13, 2022, the agency notified plaintiff that her claim

---

[2] During the administrative hearing, the ALJ noted that plaintiff drew $39,876.00 in unemployment benefits through the third quarter of 2021 (*i.e.*, during the time period in which she alleged to be disabled). *See* PageID.65.

had been reconsidered and that the previous determination was proper under the law. PageID.142. In short, Dr. Grubelich presented medical evidence to support the ALJ's ultimate finding that plaintiff retained the RFC to perform light work.

To the extent that the ALJ considered plaintiff's acceptance of unemployment benefits as an indication that she retained the ability to work, that consideration was appropriate. As this Court previously explained,

> The ALJ may consider statements made in a claimant's application for unemployment benefits. As the Sixth Circuit stated in *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794 (6th Cir. 2004):
>
>> Applications for unemployment and disability benefits are inherently inconsistent. There is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that he is ready and willing to work.
>
> *Workman*, 105 Fed. Appx. at 801-02 (internal citations, brackets and quotation marks omitted).

*Kelly v. Commissioner of Social Security*, No. 1:23-cv-24, 2024 WL 1251231 at *3 (W.D. Mich. March 25, 2024). Accordingly, this claim of error should be denied.[3]

---

[3] In an exhibit to her brief (ECF No. 13-1), plaintiff filed a copy of an August 9, 2010 memorandum from the Chief ALJ to "All Administrative Law Judges" entitled "Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits – REMINDER" which stated in part:

> This is a reminder of the policy concerning receipt of unemployment insurance benefits. Receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits. The receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled. *See* 20 CFR 404.1512(b) and 416.912(b)....
>
> [I]t is often uncertain whether we will find a person who applies for unemployment benefits ultimately to be disabled under our rules, and our decisionmaking process can be quite lengthy. Therefore, it is SSA's position that individuals need not choose between applying for unemployment insurance and Social Security disability benefits.
>
> However, application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence. Often, the underlying circumstances will be of greater relevance than the mere application for and receipt of the benefits. For instance, the fact that a person has, during his or her alleged period of disability, sought employment at jobs with physical demands in excess of the person's alleged limitations would be a relevant factor that an ALJ should

7

**B. The ALJ committed reversible error by finding that plaintiff's RFC was for work at the light exertional level.**

The second alleged error arises from the absence of evidence that plaintiff could perform light work, *i.e.*, "we then should turn to [the ALJ's] RFC finding that Plaintiff could return to light exertional work, a finding not reflected in any medical record or in the opinions of the non-examining physicians." Plaintiff's Brief at PageID.1737-1738. This alleged error is without merit. As discussed, on reconsideration, Dr. Grubelich found that plaintiff could perform a limited range of light work. PageID.128. Accordingly, this claim of error should be denied.

**C. The ALJ committed reversible error by relying upon plaintiff's daily living activities as proof that she was not disabled.**

The third alleged error contends that the ALJ improperly considered plaintiff's daily activities. An ALJ properly considers a plaintiff's daily activities as one factor in determining the RFC. *See* 20 C.F.R. § 404.1529(c)(3)(i) ("Factors relevant to your symptoms such as pain, which we consider include: (i) Your daily activities"). *See, e.g., Shepard v. Commissioner of Social Security*, 705 Fed. Appx. 435, 441-42 (6th Cir. 2017) ("It was entirely appropriate for the ALJ to consider whether [the claimant's] asserted limitations were consistent with her ability to drive, prepare simple meals, shop, and go to eat or the movies.").

Here, the issue is whether the ALJ's evaluation of plaintiff's daily activities is supported by substantial evidence. The gist of plaintiff's claim is:

> [W]hat makes things even worse in this case is that while the ALJ did refer to some of Plaintiff's answers which were early in her case, he curiously failed to note the

---

take into account, particularly if the ALJ inquired about an explanation for this apparent inconsistency.

Accordingly, ALJs should look at the totality of the circumstances in determining the significance of the application for unemployment benefits and related efforts to obtain employment.

While this memorandum provides guidance to the ALJs on addressing the financial challenges faced by individuals filing a disability claim, it is not a statute or regulation which this Court considers in evaluating plaintiff's claim.

> later questionnaires that she had completed for her doctors which indicated that her impairments had worsened to the extent that she now was having significant issues with daily living activities (PageID.1153, 1095-1097,1369, 1572).

Plaintiff's Brief at PageID.1740. In this regard, plaintiff refers to questionnaires as completed at the rheumatologist's office.

On January 24, 2022, plaintiff indicated that she had "some difficulty" with: dressing, tying shoelaces, and doing buttons; walking on flat ground; bending down to pick up clothing from the floor; and getting a good night's sleep. In addition, she had "much difficulty" with: washing and drying her entire body; and participating in recreational activities and sports. PageID.1153.

On March 17, 2022, plaintiff indicated that she had "some difficulty" with: dressing, tying shoelaces, and doing buttons; getting in and out of bed; walking on flat ground; washing and drying her entire body; bending down to pick up clothing from the floor; getting in and out of a car, bus, train or airplane; walking two miles; and getting a good night's sleep. In addition, she had "much difficulty" with: participating in recreational activities and sports. PageID.1097.

On September 19, 2022, plaintiff indicated "some difficulty" with: dressing, tying shoelaces, and doing buttons; walking on flat ground; and getting in and out of a car, bus, train or airplane. She had "much difficulty" with: bending down to pick up clothing from the floor; walking two miles; and getting a good night's sleep. Finally, plaintiff was "unable" to wash and dry her entire body or to participate in recreational activities and sports. PageID.1572.[4]

Plaintiff points out that the ALJ failed to address this later evidence of her difficulties to perform activities of daily living which appeared in the rheumatologist's records.

---

[4] The date from the questionnaire at PageID.1369 is unclear. Plaintiff does not elaborate, but this may be related to an appointment on March 17, 2022. *See* Plaintiff's Brief (ECF No. 1731).

9

As an initial matter, the ALJ was aware of these questionnaires, having reviewed the rheumatologist's records through March 2022. *See* PageID.45. While the ALJ's decision did not mention the rheumatologist appointment in September 2022, plaintiff testified about her current limitations at the administrative hearing held on November 1, 2022. *See* PageID.93-98 (plaintiff's counsel posed a series of questions regarding what plaintiff does during a typical day, explored why she stopped a recreational activity (bowling), and inquired about plaintiff's "good days" and "bad days").[5] Based on the record as a whole, the Court concludes that the ALJ's decision is supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated:  February 5, 2025                    /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[5] In this regard, plaintiff has not explained how the responses from the questionnaires require the Court to remand this case back to the Commissioner for further proceedings.  *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").